**J. D. HEDLEY et al., Appellants,**

v.

**Nicholas R. duPONT et al., Appellees.**

**No. B1598.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 18, 1979.

Rehearing Denied May 9, 1979.

Sidney L. Farr, Farr & Fillion, Houston, for appellants.

Joyce Cox, Joseph A. Kornfield, Cox, Pakenham & Roady, Houston, for appellees.

Before J. CURTISS BROWN, C. J., and COULSON and CIRE, JJ.

COULSON, Justice.

This suit was brought by J. D. Hedley and John B. Carter (plaintiffs) against Nicholas R. duPont, Eugene duPont III, Ridgely, Inc., Terra Resources, Inc., and CRA, Ltd. (defendants) to recover under agreements to convey interests in oil and gas properties. The trial court sustained certain of the defendants' special exceptions to the plaintiffs' third amended petition and, upon the plaintiffs' refusal to amend or replead, found as a matter of law that the plaintiffs' petition was not sufficient to support proof of a cause of action against defendants and ordered the plaintiffs' suit dismissed with prejudice. Plaintiffs appealed the dismissal to this court and on that appeal the cause was reversed and remanded to the trial court. *Hedley v. duPont,* 558 S.W.2d 72 (Tex.Civ.App.-Houston [14th Dist.] 1977). Defendants sought writ of error in the Supreme Court of the State of Texas and, after granting the writ, that court reversed the decision of this court and remanded the case for further consideration. *duPont v. Hedley,* 570 S.W.2d 384 (Tex.1978).

Where the trial court has dismissed a plaintiff's suit by reason of the alleged insufficiency of the pleadings the appellate court must assume the truth of the facts alleged and resolve every reasonable intendment in favor of the sufficiency of the petition. *Sanderson v. Sanderson,* 130 Tex. 264, 109 S.W.2d 744 (1937); *Nichols v. Anderson,* 164 S.W.2d 268 (Tex.Civ.App.-Amarillo 1942, writ ref'd w. o. m.). Plaintiffs' petition here alleges in substance that plaintiff Hedley is an experienced geologist who, in 1959, entered into an agreement with defendants under which he, with one Leyendecker (now deceased and not a party to this suit), would locate suitable properties for oil and gas drilling. Hedley would then present these properties to defendants who, if they elected to proceed, would pay the costs of acquiring the property and the cost of drilling wells on that lease. Under the agreement defendants were to assign plaintiffs one-fourth of the defendants' interest in the lease once the first well drilled thereon had reached "payout", the point at which the cost of drilling and completing the well, as well as the costs of acquiring the lease, had been recovered by defendants. On each subsequent well drilled on such lease plaintiffs were to become entitled to share in production from that well once the costs of completing it had been recovered. Plaintiff Hedley devoted his full-time efforts toward providing his geological services to evaluate prospective properties for acquisition by defendants from the inception of this agreement in 1959. In 1961 plaintiff Carter became associated with Hedley and Leyendecker in carrying on this program in return for a share in the interest to be assigned to Hedley.

Plaintiffs' petition further alleges that defendants in fact acquired and drilled wells on many of the properties recommended to them by Hedley and that plaintiffs believed payouts had been reached on at least some of these wells but the defendants have refused either to give plaintiffs an accounting on these properties or to assign them their one-fourth reversionary interest in those properties which have reached the payout point. Plaintiffs requested an accounting on all of the properties covered by the agreement and recovery of their one-fourth interest in those properties covered by the agreement which have reached payout.

The defendants filed special exceptions to the plaintiffs' third amended petition. The trial court sustained several of these exceptions and, upon plaintiffs' refusal to amend or replead, that court found that the petition was not a legally sufficient pleading to support a cause of action against the defendants and accordingly ordered that the action be dismissed with prejudice. The dismissal was apparently based on the theory that the plaintiffs had failed to allege that they were licensed pursuant to the

Texas Real Estate License Act, Tex.Rev. Civ.Stat.Ann. art. 6573a (1967).

Among the theories of recovery pled by plaintiffs was that of the imposition of a constructive trust. Two paragraphs of the petition dealt with plaintiffs' request that a constructive trust be imposed upon the South Roxie Field in Mississippi. This section of the petition was designated "Joint Venture count on South Roxie Field, Mississippi," and alleged that plaintiffs and defendants had been engaged in a joint venture for the acquisition of oil and gas properties. Defendants filed a special exception to these paragraphs of the petition claiming that the plaintiffs thereby sought to impose a constructive trust arising out of an alleged joint venture but that the factual allegations in the petition were insufficient as a matter of law to constitute all the necessary elements of a joint venture. This special exception was sustained by the trial court and those paragraphs were accordingly stricken from plaintiffs' petition.

Defendants' contention, with which the trial court apparently agreed in dismissing the suit, appears to be that plaintiffs cannot establish a constructive trust unless they have alleged all of the elements necessary to establish a technical joint venture. We do not agree. Our supreme court in the case of *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261–62 (1951), has discussed in great detail the policies which underlie the imposition of a constructive trust:

"While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, *and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person*

*trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one."* Sec. 225, 54 Am. Jr., "Trusts", p. 173. (Emphasis added)

"The abuse of a confidential relationship by acquiring property through the employment of knowledge or interest obtained in such relationship constitutes a sufficient basis for equitable relief in the form of the declaration and enforcement of a constructive trust in respect of such property and in favor of the person wronged. The relationships of trustee and cestui que trust, principal and agent, client and attorney, and employer and employee, are striking, *but far from exclusive, examples of confidential relationships within the meaning of this rule.* * * * " Sec. 226, Idem, pp. 173–174. (Emphasis added)

"An unfair transaction between a confider and a confidant or fiduciary, at least where the confidence is induced by a fiduciary relationship between the parties, gives rise to a constructive trust in respect of any unjust enrichment of the confidant or fiduciary. Where such a transaction is attacked, the burden of proof is on the confidant or fiduciary to establish the fairness of the transaction, and to this end he must fully disclose the facts and circumstances, and affirmatively show his good faith and the absence of pressure or influence on his part in the matter. However, it is not every relationship to which the term 'fiduciary' or 'confidential' can be applied with reason or plausibility, so as to raise a presumption of unfair dealings between the parties to the relationship. It is a question of the actual relationship between the parties that must be inquired into, and not whether the terms 'fiduciary', 'confidential,' or 'trust' can, with some degree of reason, be applied to the relationship." Sec. 227, Idem, pp. 174–175.

"*The general rule is that a purchase, upon his own account or for his own benefit, by a fiduciary or confidant, of the property constituting the subject matter of the confidence or fiduciary relationship, in violation of the trust or*

*confidence reposed in him, raises a constructive trust in favor of his principal or confider.* The rule is not confined to a particular class of persons, such as guardians, trustee, or solicitors, but is a rule of universal application to all persons coming within its principle. The principle of the rule is that no party can be permitted to purchase an interest where he has a duty to perform which is inconsistent with the character of a purchaser. * * " Sec. 228, Idem, p. 175. (Emphasis added)

See also Restatement, "Restitution", p. 64, Sec. 160, et seq., where in discussing Constructive Trusts it is stated:

"Sec. 160. Constructive Trust.

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

"A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which give rise to a constructive trust may or may not involve a fiduciary relation." Idem, p. 641.

The Supreme Court further elaborated on the question of whether a technical joint venture is necessary to establish a constructive trust in the case of *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962). In *Gaines* the plaintiff, an experienced geologist, and the defendant operated from 1954 through 1958 under an agreement whereby the plaintiff would work up geological information on land on which a lease was planned to be acquired. The defendant would underwrite all of the expenses of the transaction, generally take a lease in his name, and transfer the lease to third parties who wished to drill thereon, retaining an overriding royalty or other interest in his name. After the defendant had recouped his expenses the overriding royalty would be divided equally between the plaintiff and the defendant. The particular transaction involved in the litigation arose over a tract of land, on which the plaintiff had done geological work, which became available because of the expiration of a prior lease. Plaintiff apparently brought this tract to the attention of the defendant and discussed with him the advisability of securing a lease on that property. Both parties spoke to the owner of the tract and a lease was executed in the defendant's name. Third parties subsequently paid for the lease and drilled thereon after being given a detailed geological report by the plaintiff. Defendant retained one-quarter of the ⅞ working interest in his name and the plaintiff sued to impose an equitable trust on one-half of the interest held by the defendant.

The *Gaines* court found upon the facts alleged by the plaintiff that the parties had for a number of years been engaged in acquiring oil and gas leases which they were to hold jointly to be transferred to third parties, with the plaintiff and defendant retaining and holding jointly some mineral interest, subject to the defendant's right to recover his expenses. Under their arrangement the plaintiff would contribute the "geology" and the defendant would pay the expenses of procuring and reselling the lease for drilling. The court found that these facts were sufficient to establish a confidential relationship. The opinion states that the parties had just completed a successful transaction and defendant informed plaintiff that this transaction would be "the same deal . . ." as the prior venture. The third parties decided to invest in the transaction largely on the basis of the plaintiff's geological reports. The court concluded that if the defendant kept the entire retained one-quarter of the seven-eighths working interest after production had been obtained he would be the recipient of an unjust enrichment resulting from the breach of the confidential relationship. The court cited *Fitz-Gerald v. Hull, supra* ; *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960); and *Peckham v. Johnson,* 98 S.W.2d 408 (Tex.Civ. App.-Fort Worth 1936) affirmed 132 Tex. 148, 120 S.W.2d 786 (1938). *Gaines v. Hamman, supra,* 358 S.W.2d at 560.

In the case before us plaintiff Hedley also furnished his geological services in evaluat-

ing properties and the defendant, presumably based upon that geological information, provided all of the expenses incident to acquiring the leases and drilling thereon. We do not find that the presence or absence of third parties make a significant distinction where specialized information obtained and provided by the plaintiffs in an alleged confidential relationship is used by the defendant to his advantage in acquiring, drilling, and obtaining production on oil and gas properties. This would also constitute unjust enrichment of the defendant resulting from the breach of a confidential relationship. We note that in the case before us, as in *Gaines,* the plaintiff alleged that several prior transactions had been consummated under the same agreement. Also as in *Gaines* the parties agreed that the defendant was to recoup all of his expenses prior to the plaintiff's right to participate in his share of the proceeds resulting from the transaction. Here the transaction was structured so that assignment of their interests to the plaintiffs was not to occur until the defendants had recovered their expenses. At that point the plaintiffs were to get an undivided portion of the same interest acquired by the defendants, and they would then hold it jointly. It is unclear in *Gaines* how the transaction was structured, but it is clear that the plaintiff had no right to receive anything until the defendant had recovered his expenses.

The *Gaines* court further stated that the existence of the confidential relationship did not depend upon the technical existence of a joint venture: "The important circumstance from which the law will raise a constructive trust is the breach of a confidential relationship which may exist, although such relationship may not meet the technical requirements of a partnership or joint venture." *Gaines v. Hamman, supra,* 163 Tex. 618, 358 S.W.2d at 560–561.

■ The plaintiffs here alleged that the basic agreement between the parties was entered into in 1959; that the plaintiff Hedley was to use his geological expertise to evaluate prospective oil and gas properties for acquisition by the defendants; that

Hedley in fact devoted his full time towards such efforts from the inception of the agreement; that he presented many properties to the defendants, which they acquired. It was further alleged that the agreement was performed, and defendants assigned him his share of their interest in many of these properties, but that as to the properties now involved in litigation the defendants failed and refused to carry out the agreement by assigning him his interest after they had recovered their expenses. We believe that these allegations are sufficient to support proof of a confidential relationship as to all of the properties involved in litigation and a breach of that relationship. Therefore a constructive trust could be imposed to prevent the unjust enrichment of the defendants which would result from their being allowed to keep the total interest in those properties.

■ Under our findings plaintiffs' petition was adequate to support proof of a cause of action based upon the imposition of the constructive trust. A plaintiff may establish and recover under a constructive trust whether or not he was acting as a dealer in real estate under the terms of the Real Estate Licensing Act. *Cf. Consolidated Gas and Equipment Company of America v. Thompson,* 405 S.W.2d 333 (Tex.Sup. 1966); *Breeding v. Anderson,* 152 Tex. 92, 254 S.W.2d 377 (1953). It was therefore improper for the trial court to dismiss the plaintiffs' entire action with prejudice because they had not pled that they were licensed dealers under the act.

[3] We note further that the plaintiffs' petition includes a prayer for recovery of money due them from defendants' leased property in Jefferson County, Texas. Attached to the petition is a copy of a formal, recorded conveyance by certain of the defendants of one-quarter of one-half of the working interest to Hedley, to become effective when the grantors have recovered their proportionate part of expenses in acquiring and drilling the first well on the property. If the well on the described leases has reached the payout point then Hedley is already the legal owner of this as-

signed interest, and he is entitled to an accounting thereon without the necessity of establishing that it is covered by a constructive trust. It was error to dismiss plaintiff Hedley's cause of action for an accounting as to the Jefferson County property on which a legal interest has already been conveyed to him.

Defendants have urged us to reconsider their cross-points. We adhere to our prior opinion in this case in holding that a Texas court which has jurisdiction over the parties can compel them to execute a conveyance of lands beyond that court's jurisdiction, and in holding that it is not necessary for plaintiffs to plead their case in trespass to try title. We refer to our prior opinion for our reasoning in support of these propositions.

We sustain plaintiffs' third and fourth points of error and overrule defendants' cross-points. Accordingly we reverse the decision of the trial court and remand the case to that court for trial.

Reversed and remanded.