

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00755-CV

Eddie Louis **HERRERA**,
Appellant

v.

Diane **TALAMANTEZ**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2020CI13639
Honorable Norma Gonzales, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
H. Todd McCray, Justice
Velia J. Meza, Justice

Delivered and Filed: January 14, 2026

AFFIRMED

Appellant Eddie Herrera appeals from a judgment partitioning real property he jointly owns with Appellee Diane Talamantez. In three issues, Hererra argues the trial court failed to follow governing statutes and case law on partition procedure and joint ownership. We conclude the trial court acted within its broad equitable discretion in fashioning a partition sale that complies with Texas Rule of Civil Procedure 770, honoring the parties' contractual agreement, and denying payment for rent. Accordingly, we affirm the judgment of the trial court.

**BACKGROUND**

In October 2003, Diane Talamantez purchased a single-family residence in San Antonio. The evidence shows she furnished approximately $11,000 as the down payment and executed the mortgage note and deed of trust individually, as an unmarried person. Eddie Herrera was not a borrower, was not personally liable on the note, and did not execute the loan documents.

A week before the closing, Herrera proposed marriage to Talamantez. Shortly after she agreed to marry him and finalized the purchase of her home, Herrera asked Talamantez to sign a special warranty deed conveying him a one-half interest in the house. Talamantez complied, and the deed was later recorded, listing Herrera as grantee. Talamantez moved into the house, and the parties continued their relationship for several more years without marrying.

In January 2006, Herrera drafted an agreement providing that upon any sale of the house: (1) Herrera would receive $25,000 from the "net proceeds," and (2) the parties would divide the "remaining net proceeds" equally. The agreement was notarized and recorded. Herrera claims he gave Talamantez money for the down payment on the property and that he fully furnished the home. He testified that he drafted the 2006 agreement in an effort to ensure reimbursement for those expenses. Talamantez testified she signed the 2006 agreement based on Herrera's assurances that they would soon marry and he would invest in needed repairs to the property.

A short while later, the relationship ended. Talamantez remained in possession of the house and has lived there since the purchase. Herrera has never lived in the home. In 2020, Talamantez filed this suit for partition and reimbursement. Herrera counterclaimed for enforcement of the 2006 agreement and distribution of sale proceeds under its terms. The trial court granted summary judgment in part, leaving partition as the only issue for trial.

At trial, the court heard testimony that Talamantez alone paid the mortgage, property taxes, homeowner's insurance, and substantial necessary repairs, including foundation work, roof

replacement, HVAC replacement, and window replacement, for approximately twenty years. Talamantez offered documentation showing her total investment in the property is roughly $277,000. Using this evidence, the court calculated her reimbursement at $146,398. Herrera offered no documentation of any payments on his part toward purchase, principal, interest, taxes, insurance, or repairs.

The court found the parties' 2006 agreement valid and enforceable. It ordered the property partitioned by sale and appointed a receiver to conduct the sale. The court then divided the sale proceeds under the 2006 agreement. Because Herrera is owed a non-equitable, fixed amount of $25,000, the court ordered that the receiver subtract $25,000 from the net sale proceeds before making any other calculations. The remainder is to then be divided equally, with Talamantez receiving fifty percent of the resulting net proceeds plus an additional $146,398 as reimbursement, and Herrera receiving fifty percent plus the additional $25,000 contractual amount.

Once the receiver secures a third-party purchase contract and calculates each party's projected distribution, the judgment authorizes Talamantez to tender Herrera the amount he would receive, plus the receiver's fees and expenses, within thirty days to obtain full title without a receiver's sale. The judgment also provides that, if the receiver's calculations show Herrera would receive no net proceeds under these calculations, Talamantez may acquire full title by paying only the receiver's fees and expenses.

These provisions, particularly the procedure allowing Talamantez to obtain full title without a sale, form the basis of Herrera's challenge on appeal.

## STANDARD OF REVIEW

Partition is an equitable proceeding reviewed under an abuse of discretion standard. *Wood v. Wiggins*, 650 S.W.3d 533, 547 (Tex. App.—Houston [1st Dist.] 2021, pet. denied); *Rodriguez v. Rivas*, 573 S.W.3d 447, 451 (Tex. App.—Amarillo 2019, no pet.). The trial court's discretion

extends to adjusting all equities between the parties before rendering a decree of partition or distributing proceeds. *Dakan v. Dakan*, 125 Tex. 305, 320–21, 83 S.W.2d 620, 629 (1935); *Bowman v. Stephens*, 569 S.W.3d 210, 223 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Snow v. Donelson*, 242 S.W.3d 570, 572 (Tex. App. —Waco 2007, no pet.); *Yturria v. Kimbro*, 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi–Edinburg 1996, no writ). Appellate courts will overturn a partition judgment if it is shown to be arbitrary, unreasonable, or unsupported by guiding legal principles or where evidence of unfairness is conclusive. *See Rodriguez*, 573 S.W.3d at 451; ); *Bowman*, 569 S.W.3d at 223; *Grimes v. Collie*, 733 S.W.2d 338, 341 (Tex. App.—El Paso 1987, no writ). Where the trial court applies the correct legal standard and its equitable adjustments have a reasonable basis in the record, we defer to its judgment. *Bowman*, 569 S.W.3d at 223.

**ANALYSIS**

**A.  Partition Procedure Under Rule 770**

Herrera argues the trial court "invented" a partition procedure by granting Talamantez an improper post-offer purchase option rather than following Property Code section 23.001 and Texas Rule of Civil Procedure 770. He contends that when partition in kind is impossible, Rule 770 requires a receiver sale as the only permissible remedy and that the trial court's judgment sidesteps that requirement. The record does not support this view.

Section 23.001 grants any cotenant an absolute right to compel partition. *See Wood*, 650 S.W.3d at 548. When property cannot be fairly partitioned in kind, Rule 770 requires a sale. TEX. R. CIV. P. 770. Rule 770 authorizes the court to appoint a receiver to expose the property to the open market, obtain a bona fide offer, and distribute proceeds according to the parties' respective interests. *Id*. Within this framework, the court may manage the details of the process so long as it

does not substitute a new procedure for the one the rule prescribes. *See Rodriguez v. Rivas*, 573 S.W.3d 447, 454 (Tex. App.—Amarillo 2019, no pet.).

It is undisputed that the property at issue cannot be partitioned in kind. The trial court therefore ordered a Rule 770 receiver sale. It appointed a receiver, directed the receiver to list and market the property through MLS, required the parties to cooperate in showing the home and signing sale documents, and instructed the receiver to calculate the parties' shares based on the contractual sales price. These steps follow Rule 770 precisely.

Herrera's complaint lies primarily with Talamentez's post-offer purchase option. He contends that such a process is not permitted under Rule 770. In support of his position, Herrera relies on *Rodriguez v. Rivas*, 573 S.W.3d 447 (Tex. App.—Amarillo 2019, no pet.). However, the judgment in this case differs substantially from the one reversed in *Rodriguez*. There, the trial court bypassed the sale entirely and imposed a fixed buyout figure without exposing the property to the market at all. *Id*. at 451. Here, the statutory safeguards remain intact as the option provision does not bypass the Rule 770 sale; it merely offers Talamantez the option of purchasing the property at the market rate as determined by a third-party purchase contract. The option becomes available only after the receiver secures a bona fide offer and calculates the parties' distributive shares, including reimbursement and contractual adjustments.

Because the option price is set by the market rather than by a judicial directive, a sale to Talamantez does not replace the receiver sale or reduce it to a formality. Nor does it divest Herrera of title without valuation. Upon Talamantez's exercise of the option, a transfer of title will have occurred pursuant to a receiver sale as contemplated by Rule 770.[1] *See* TEX. R. CIV. P. 770 (providing a receiver sale shall be for cash, *or upon such other terms as the court may direct*, and

---

[1] Should Talamantez elect to exercise the option, the judgment requires that she bear sole responsibility for the receiver's fees and expenses. This obligation confirms that the sale occurs within the context of a Rule 770 receiver sale.

shall be made as under execution or *by private or public sale through a receiver.*" (emphasis added)).

Under these circumstances, the option operates within the framework of Rule 770: a receiver sale is ordered, the property is exposed to the market, and the calculation of each party's share is tied to the offer obtained. Herrera's first issue is overruled.

## B. The 2006 Agreement and Property Code § 23.004

Herrera also argues the trial court erred by recognizing Talamantez's right to reimbursement before enforcing the parties' 2006 agreement. He contends that because the court found the agreement "valid and enforceable," it was obligated to distribute proceeds strictly according to its terms. According to Herrera, the reimbursement award effectively eliminates his contractual rights and violates Property Code § 23.004. We disagree.

The trial court's judgment enforces the 2006 agreement as written. The agreement dictates the ultimate division of "net proceeds" by granting Herrera the first $25,000 from the net sales proceeds and dividing the remainder of the net proceeds equally. Where the agreement does not define "net proceeds" or address the parties' contributions, Texas law fills the gap by requiring the court to settle equitable adjustments before distributing proceeds. *See Bouquet v. Belk*, 376 S.W.2d 361, 362 (Tex. App.—San Antonio 1964, no writ) (a partition suit is governed by the rules of equity in all things not expressly provided for in the statute); *see also .Dakan*, 83 S.W.2d at 629; *Goodloe & Meredith v. Harris*, 127 Tex. 583, 589, 94 S.W.2d 1141, 1144 (Tex. 1936); *Becker v. Becker*, 639 S.W.2d 23, 25 (Tex. App.—Houston [1st Dist.] 1982, no writ).

Long standing authority recognizes that a cotenant who pays necessary carrying costs such as mortgage principal and interest, taxes, insurance, or repairs acquires a vested equitable interest that must be satisfied before further distribution occurs. *Dakan*, 83 S.W.2d at 629 (recognizing equitable reimbursement rights in partition); *Henry v. Brooks*, 651 S.W.3d 657, 663 (Tex. App.—

Tyler 2022, no pet.) (holding that "[i]f one cotenant pays more than her share … she is entitled to reimbursement from her cotenants."); *Bowman*, 569 S.W.3d at 222 (finding party who expends money necessary to protect or preserve the common property is entitled to have those expenditures charged to remaining cotenants); *Campbell v. Tufts*, 3 S.W.3d 256, 259 (Tex. App.—Waco 1999, no pet.) (noting accounting for equitable claims is distinct in partition action); *Becker*, 639 S.W.2d at 25 (holding paying cotenant entitled to reimbursement for necessary costs before division). These adjustments ensure each cotenant receives its true interest in the property. *Green v. Doakes*, 593 S.W.2d 762, 765 (Tex. App.—Houston [1st Dist.] 1979, no writ).

As Herrera notes, section 23.004 of the Property Code provides that a partition does not "affect conditions and covenants" relating to the property. TEX. PROP. CODE § 23.004. While the language of section 23.004 preserves ownership percentages and contractual terms, it does not eliminate the equitable accounting adjustment that must occur in partition. Nothing in the 2006 agreement reflects that the parties intended Herrera to receive the first $25,000 of net proceeds without accounting for nearly two decades of mortgage, tax, insurance, and repair payments made by Talamantez alone. *See* TEX. R. CIV. P. 760 (providing court must determine all questions of law or equity affecting title during partition); TEX. R. CIV. P. 776 (stating partition must proceed consistent with rules of equity).

Further, the authorities on which Herrera relies involve general contract principles; none concern partition, cotenancy, reimbursement, or section 23.004. They therefore do not control in this equitable proceeding. Because the trial court enforced the agreement as written and separately applied established reimbursement doctrine, it neither violated section 23.004 nor eliminated Herrera's contractual rights.

Texas law also does not place the parties in identical positions for purposes of the purchase option at issue here. As discussed, a cotenant who pays the property's mortgage principal, interest,

taxes, insurance, and necessary repairs acquires a pre-distribution equitable interest that must be satisfied before applying contractual shares. *Dakan*, 83 S.W.2d at 629; *Henry*, 651 S.W.3d at 664; *Goodloe*, 94 S.W.2d at 1144; *Becker*, 639 S.W.2d at 25. That equitable claim exists independently of the 2006 agreement and functions as a superior interest until fully accounted for. Herrera, by contrast, holds no reimbursement claim and no contractual right to acquire the property. Once the receiver obtains a bona fide offer and calculates the parties' distributive shares under Rule 770, Herrera's remaining interest becomes a fixed, market-tested sum that can be satisfied by payment without disturbing any right he holds. Because only Talamantez has a pre-distribution equitable interest, and because the agreement does not grant Herrera a reciprocal purchase right, the purchase option need not operate symmetrically. Herrera's second issue is overruled.

### C. Claim for Rent

Finally, Herrera claims that he is entitled to rent for Talamantez's long-term exclusive possession of the house. Herrera specifically contends that Talamantez forcibly kept him from enjoying the benefits of his property and that the trial court erred in failing to compensate him for such. We note that a tenancy-in-common gives any cotenant the right to possession of the property in which he or she owns an interest. *Todd v. Bruner,* 365 S.W.2d 155, 160 (Tex.1963). However, absent either an agreement to the contrary or ouster, one cotenant's exclusive use of common property does not result in liability to the other for rent. *Grimes*, 733 S.W.2d at 339; *Smejkal v. Smejkal*, No. 13-09-00285-CV, 2009 WL 3921039, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2009, no pet.) (mem. op., not designated for publication); *Potka v. Potka*, 205 S.W.2d 51, 55 (Tex. App.—Waco 1947, no writ).

Because Herrera acknowledges that he and Talamantez had no agreement regarding the payment of rent, Herrera is entitled to be compensated for Talamantez's possession of the home only where he proves ouster. Ouster, in the context of cotenancies, is "unequivocal, unmistakable,

and hostile acts the possessor took to disseize other cotenants." *Hardaway v. Nixon*, 544 S.W.3d 402, 409 (Tex. App.—San Antonio 2017, pet. denied). The record before us shows no evidence of a demand by Herrera to occupy the property, no refusal by Talamantez to let him occupy the property, and no exclusion that would amount to ouster. Herrera's claim rests solely on Talamantez's long-term occupancy and her testimony at trial that she considers the house to be hers. Exclusive possession alone is not considered ouster. *Henry*, 651 S.W.3d at 663; *Casso v. Fullerton*, No. 04-05-00905-CV, 2006 WL 2612600, at *2 (Tex. App.—San Antonio Sept. 13, 2006, pet. denied) (mem. op., not designated for publication); *Potka*, 205 S.W.2d at 126. Accordingly, the trial court acted within its discretion in denying Herrera's claim for rent. Herrera's third issue is overruled.

## CONCLUSION

The trial court followed the statutory framework governing partition, applied the parties' 2006 agreement as written, and awarded reimbursement consistent with long-established equitable principles. It did not abuse its discretion in denying rent or in structuring the receiver sale under Rule 770. Accordingly, the judgment is affirmed.

H. Todd McCray, Justice